IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CATHY COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRISTOL CARE, INC., d/b/a/ | ) | Case No. 6:18-cv-04069-MDH |
| Bristol Manor of Camdenton, et al., | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

Before the Court is Defendants' Motion to Compel Arbitration and Dismiss or Stay Proceedings Pending Arbitration. (Doc. 8). Defendants request that the Court dismiss or stay this action and compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, the Missouri Uniform Arbitration Act R.S.Mo. §§ 435.350-435.470, and the valid arbitration agreement contained in the parties' contracts at issue in this matter. Plaintiff has filed a response arguing that the written arbitration agreement should not be enforced because it lacked consideration, was not agreed to by Defendant, was ambiguous, and that the Plaintiff's claims fall outside the agreement's scope. Defendants' Motion is ripe for review.

## BACKGROUND

For purposes of analyzing the pending Motion to Compel Arbitration, the relevant facts taken from Plaintiff's Verified Complaint (Doc. 1) and (Doc. 10, Exhibit A) are summarized as follows:

On March 6, 2016, Plaintiff completed and signed an employment application for Bristol Care, Inc. Part of this application contained a mandatory arbitration agreement, which stated:

1

> In consideration for Bristol Care accepting my employment application for review, and in consideration for Bristol Care's mutual agreement to arbitrate, I, along with Bristol Care, hereby consent to the resolution by binding arbitration of all claims or controversies arising out of, related to, or associated with my application and consideration for employment with Bristol Care. Such arbitration shall be conducted in accordance with the American Arbitration Association's National Rules for the Resolution of Employment Disputes, including the provisions thereunder regarding the allocation of arbitration costs and fees. All claims will be arbitrated on an individual basis and may not be heard or considered on a class, collective, or other basis involving the consolidation or aggregation of your or Bristol Care's claims with the claims of another party.

Another part of the application stated:

> I understand that receipt of this application by Bristol Care does not imply employment and that this application is not a contract of employment.

After reviewing her application, Defendant hired Plaintiff to work at a residential nursing facility. Plaintiff alleges that while employed she was repeatedly sexually harassed by a male resident of the facility. She alleges that her employer was aware of and did not take appropriate action to stop this sexual harassment, in violation of the Missouri Human Rights Act and Title VII of the Civil Rights Act. She also alleges she was retaliated against for discussing the situation with her own attorney and, later, her supervisor, again in violation of the Missouri Human Rights Act and Title VII of the Civil Rights Act. On April 9, 2017, Plaintiff considered herself effectively discharged and on February 15, 2018, filed suit in state court. After removing the case to federal court, Defendant filed a motion to compel arbitration pursuant to the written arbitration agreement. (Doc. 8) Defendant has also alleged that Plaintiff made misrepresentations in her application for employment and during the hiring and selection process. (Doc. 11).

Plaintiff argues that the agreement was not a properly formed contract because: 1) the agreement lacked valid consideration; and 2) because the defendant, by not signing

the document, signaled an absence of intent to be bound by the agreement. (Doc. 16). Additionally, Plaintiff argues her claims fall outside the scope of the arbitration agreement and that the language of the agreement is sufficiently ambiguous as to render it ineffective. (Doc. 16).

**DISCUSSION**

The Supreme Court has stated that arbitration is a matter of contract and a party cannot be required to submit a dispute to arbitration if he did not agree to submit it. *Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Const. Products,* 359 F.3d 954, 955-56 (8th Cir. 2004); citing, *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The Court must first determine whether there is a valid and binding arbitration agreement between the parties. That issue is a matter of contract. See *Newspaper Guild of St. Louis, Local 36047, TNG-CWA v. St. Louis Post Dispatch, LLC*, 641 F.3d 263, 266 (8th Cir. 2011) (internal citation omitted). When deciding whether to compel arbitration, the Court must first ask whether a valid agreement to arbitrate exists between the parties. *Id.* The Court "must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 699 (8th Cir. 2008) (internal citation omitted). Arbitration is a matter of contract, and "arbitrators derive their authority to resolve disputes only because the parties have agreed" to it. *Id.* at 700 (internal citation omitted). If an agreement does exist, the Court can determine whether the dispute falls within the scope of that agreement. *United Steelworkers of Am. v. Duluth Clinic, Ltd.,* 413 F.3d 786, 788 (8th Cir. 2005). Further, unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the

court, not the arbitrator. *AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986).

### A. Contract Formation

Plaintiff argues that the agreement is invalid because it lacks bargained for consideration. Consideration is a necessary element to form a valid contract in Missouri. *Baker v. Bristol Care, Inc.*, 450 S.W. 3d 770, 775 (Mo. 2014), reh'g denied (Oct. 28, 2014). Plaintiff also notes that the offer or continuation of at-will employment is insufficient to constitute consideration under Missouri law. She is certainly correct as to the continuation of at-will employment. *Whitworth v. McBride*, 344 S.W.3d 730, 741 (Mo.Ct.App. 2011). However, her cited authority avoids the specific issue in this case, namely whether an arbitration agreement is supported by consideration when it is exchanged for an employer's acceptance of an application. Federal courts in Missouri have held that "[t]he arbitration provision in the Employment Application is a valid and enforceable provision of the employment agreement." 2007 WL 2908756, at *2 (W.D. Mo. Oct. 4, 2007); *see also Houston v. NPC International*, 2014 WL 12779236, at *4 (W.D. Mo. Mar. 24, 2014).

In addition, she is incorrect that the "only consideration being offered by Defendant in exchange for Plaintiff's agreement to the arbitration provision is Defendant's consideration of Plaintiff's application for potential at-will employment." (Doc. 16). By the terms of the arbitration agreement, Defendant also offered, in consideration for Plaintiff's assent, its own assent to resolve employment claims via binding arbitration. In Missouri, this type of bilateral contract containing mutual promises is supported by consideration so long as the promises are binding and not illusory. *Sumners v. Service Vending Co.*, Inc., 102 S.W.3d 37, 41 (Mo.Ct.App. 2003). Here, the promise is binding – the terms of the arbitration agreement do not allow defendant to escape its obligation

4

via unilateral action or fiat. The Court considers this exchange of ironclad promises sufficient consideration to support the contract.

As a matter of contract formation, Plaintiff also argues that Defendant never accepted the contract because none of its agents signed the application form containing the arbitration agreement. The Court is similarly unpersuaded by this argument. Plaintiff relies on *Baier v. Darden Restaurants*, 420 S.W.3d 733 (Mo.Ct.App. 2014), a case where the employee as a condition of employment signed a binding arbitration agreement. That contract contained a spot for an employer signature that was left unsigned. *Id.* at 739. When Baier attempted to evade the arbitration agreement, she asserted that the contract was not binding because Darden hadn't signed it. *Id*. The Court agreed, stating that Darden's failure to sign the contract presented a question of fact regarding its intent. *Id.* at 738. Because there was evidence in the record that contradicted Darden's supposed intent to be bound by the agreement, the Court held that the contract was invalid for lack of acceptance. *Id*. at 741.

Here, we are similarly confronted by the absence of an employer's signature on a contract. However, a party's signature is not the exclusive method of demonstrating agreement. *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 22-23 (Mo. App. W.D. 2008). Acceptance can also be demonstrated by conduct. *Heritage Roofing, LLC v. Fisher*, 164 S.W.3d 128, 134 (Mo.App.E.D. 2005) (internal citations omitted). In this situation, unlike in *Baier*, the conduct of the employer unambiguously indicated its intent to be bound by the terms of the contract. Crucially, in this case, there was no signature box left blank by the employer, so the lack of a signature does not clearly signal a lack of intent to be bound to the agreement. Moreover, both the acceptance of the application and the hiring of the Plaintiff point toward Defendant's implicit acceptance and intent to be bound by the agreement. The Plaintiff offers no evidence to discredit the Defendant's

5

argument that it accepted the agreement by considering Plaintiff's application and subsequently hiring her.

### B. Scope and Ambiguity

Turning away from the existence of a contract, Plaintiff argues that the scope of the agreement does not cover her claims. The Court recognizes the public policy favoring the resolution of disputes via arbitration. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Sheffield Assembly of God Church, Inc., v. American Ins. Co.*, 870 S.W.2d 926, 929 (1994). The Court also recognizes that an arbitration may be compelled under a broad arbitration clause so long as the underlying factual allegations touch on matters covered by the provision. *3M Co. v. Amtex Sec.*, Inc., 542 F.3d 1193, 1199 (8th Cir. 2008) (internal citations omitted).

The clause at issue here states:

> I, along with Bristol Care, hereby consent to the resolution by binding arbitration of all claims or controversies arising out of, related to, or associated with my application and consideration for employment with Bristol Care.

Plaintiff argues that since the clause does not specifically apply to disputes arising after the employment offer had been made and accepted, it does not apply to the instant dispute. Public policy requires this Court to interpret these provisions broadly – and although the contract does not explicitly extend its scope beyond the employment offer, it does not explicitly limit it, either. In light of this silence, the Court construes the language liberally, in favor of the applicability of the arbitration agreement. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.* 460 U.S. 1, 24 (1983) ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements . . . any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration.") Plaintiff consented to arbitration of all claims related to her application and consideration for employment with Bristol Care.

In its Answer, the Defendant has made allegations that misrepresentations contained in Plaintiff's application provide a defense to Plaintiff's claim (Doc. 11). As such, issues in the lawsuit at least touch on matters that relate to her employment application and consideration for employment. Eighth Circuit precedent encourages broad interpretation of the scope of arbitration agreements, and together with these allegations, places her claims within the scope of the arbitration agreement. *3M Co.*, 542 F.3d at 1199.

Finally, Plaintiff argues that the Application Authorization and Agreement section of the application, when read with the arbitration agreement, creates an ambiguity as to the scope of the agreement. This Court disagrees. Ambiguity exists when terms are susceptible to more than one reasonable meaning. *Weitz Co. v. MH Washington*, 631 F.3d 510, 519 (8th Cir. 2011) (internal citations omitted). The Application Authorization and Agreement merely provides that receiving an application does not imply employment and is not an employment contract. It does not in any way confuse the purpose or scope of the arbitration agreement and is not susceptible to multiple reasonable meetings.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Court hereby **GRANTS** Defendants Motion to Dismiss and Compel Arbitration. (Doc. 8). The Court finds that all issues raised by Plaintiff are subject to arbitration and therefore **ORDERS** that Plaintiff's Verified Complaint is dismissed.

**IT IS SO ORDERED.**

DATED: July 13, 2018

                                           */s/ Douglas Harpool*
                                           **DOUGLAS HARPOOL**
                                           **UNITED STATES DISTRICT JUDGE**